Good morning. May it please this honorable court, I'd like to reserve one minute of my time for rebuttal. Certainly, just keep your eye on the clock. I will do so, ma'am. Your honors, the defendant, Mr. Masmari, points to three errors that we believe requires reversal of his sentence. Mr. Masmari's sentencing occurred almost a year ago in far different circumstances than is before this court. It was a politically highly charged political case. Before this court now is whether the sentencing guidelines, which were meant to tamper just such an occasion, really have any meaning at all. The first error that was conducted by the court was a failure to give notice of its intent to depart. There was no notice given. There was no objection, so what's the harm? It seems to me that counsel is well prepared to argue that the sentence should be no higher than the statutory minimum. The harm in this particular part, and first on the part of objection, there was no indication until actually after all arguments had been made in this particular case that the court was considering departing. In fact, the only place that an objection could have been suitable was at the close of arguments after the sentence had been announced. Because until the trial court started to indicate its reasons, there was no indication that the trial court was considering it. Secondly, Your Honor, the harms here are specifically when we look at the grounds that the court departed on. The first part was that factually the court found several things and analogized this particularly to intent. Now, that's problematic on two grounds. First, that the defendant had not been on notice that he needed to put more evidence in on intent. What more evidence could you have presented on intent? Could have called the psychological witness, the psychiatrist that had been called, to give more information on the defendant's blackout, his alcohol history, how he would lack the requisite intent, how he could continue to function in such a blackout without intent to do such things. Had some of that been presented? Some had, but again... And why would there have not been the interest in presenting everything you had on that in the first instance? Because we had no knowledge that it was specifically at issue in this case. The probation report had considered it, but not raised it, etc. on it. We had believed that an alcohol and drug abuse, which is a normal function for a defense counsel to get, was important in this case given the client's long substance abuse history. So if we had known that we needed to focus specifically and to call witnesses to have an opportunity for the court to hear and understand them, in that part there would have certainly been more evidence on that question. The second part is... That would have made a difference? Certainly it would have had an opportunity to make a difference. It's impossible to say on the part, but the court's findings in this and the inability to present evidence may well have made a difference. It comes in that the factual hearing also, the other part, was to look at the actual crime itself, the crime scene, where the fire had been set, whether there was an intent to actually harm anyone based on the fact that it would have been set high above to do some more reconstruction on those parts. If intent had been at issue and we had clear knowledge that the idea was to intent to depart, it would have been a far different hearing. The second part on it... Before you go there, I thought the district judge in the Statement of Reasons focused on the fact that there were 750 people in a crowded club on New Year's Eve and what a substantial risk of danger. So, again, I'm having a problem with this so-called evidence of intent making a difference. Well, it made a huge difference from the part on that factor, and I'll come to it, Your Honor, on the 750 had already been accounted for under the guidelines. But whether he had simply done this in a blackout, et cetera... How could you... I mean, you can't go into a nightclub, set this bomb, whatever it was, in a blackout. I mean, I don't even understand that argument. Actually, we would have been able to put on evidence that people in blackouts do extraordinary things. They've traveled long distances. But it required him to plan to have this... I mean, he couldn't have done the entire course of this crime in a blackout. We would have presented some evidence that he could have, Your Honors. But even if you could have, which I find sort of dubious, to Judge Carney's point, the district court judge didn't really focus on intent, focused on the risk that was posed, how many people were at risk. It wasn't focused on his specific intent. Well, to that second point, Your Honor, I disagree in several things he did in his comments mention on intent. And I would also note that that finding was contradictory to the finding he'd made earlier that the attempted murder, which would be if you were intending to harm these persons with that intent, that would have been the appropriate guidelines, yet everyone factually found that it was not. The second part... Here's the way that I see it, Counsel. The crime was obviously very serious, and reasonable minds looking at these facts could say that the five-year deal that you negotiated with the government for the mandatory minimum sentence was a pretty good deal. So by the time you came into sentencing with the five-year mandatory minimum on the table, you could only go up from there, right? Because the government and the defense had agreed on the five-year sentence, and it can only go up from there. All the mitigating factors that you had, whether it went to intent, whether any three factors that you had was on the table, and you argued that to the district court. Now, it seems to me you're here saying we could have done a little more on intent, we could have done more on that. You had the opportunity to present whatever mitigating circumstances that you had that would go towards a sentence that was just at the five-year mandatory minimum. So I'm not sure what you're complaining about. Well, we're certainly complaining on the lack of notice. We should have had notice on that, and we should have known. But we're under plain error, right? We're under plain error, so you have to show prejudice from that. I mean, even if we might agree with you, you should have had notice, but that doesn't get you there. We believe that we would have been able to address different portions in this more effectively had we known the parts. The second part to the part is the contradictory parts inside the guidelines that are present here. One, the risk of harm to others is already accounted for and was allotted under the guidelines. This court, as we've set out in our briefs, has left open whether the guidelines, whether a court can depart then when it is already a factor that has been considered in the guidelines. The next portion that we were- But having 700 people isn't a factor in the guidelines already, is it? Well, it says a substantial risk to harm to lives, and the guidelines there look out. It doesn't say to a singular life. It says to life and limb, to others. But isn't it reasonable to then think that 700 is maybe more than the typical crime would be? It might be, Your Honors, but it wasn't clearly set out on the record that we're disagreeing or believing that the guidelines should go above there in those particular circumstances, and there are a hodgepodge of contradictory reasons that are given. That's perhaps the strongest, but we'd argue under the circumstances that it's unreasonable, given the actual risk that occurred in that there were no injuries, there were no parts, and it was easily evacuated. Under the circumstances, Your Honors, the other parts that we need to look at is the high recognition on the hate crime. They repeated that Nabors was a well-known gate club, et cetera, in it, and there were certainly aspects of that put forward both by the government and by the court, yet Congress has said that that has to be shown by a hate crime enhancement, has to be shown beyond a reasonable doubt. What the court here effectively did was lower that standard. It admitted that they had not proved a hate crime beyond a reasonable doubt, and yet still sentenced it on that same type of factor. If that's allowed to stand... Why do you say that that's what the court did? Where does it say that he was doing this as a hate crime? Well, he said the government argued, and the court said that they were mindful of the Nabors, its establishment, its patronage, the gay community, all of those things, which to the defense sits here to submit to this court are all factors that would properly be categorized as a hate crime. If you call a rose a rose by any other name, it is still a rose, and that is exactly what the court did. He says the hate crime guideline has not applied. He did, and then went ahead and gave reasons that would be consistent with it. And so what we say on that is that it's completely contradictory. Yes, I can say the hate crime doesn't apply, but the fact that you were gay and the fact that it seems to me that it was intentional and probably based on that orientation, and it's a gathering place, I will send it to you more. That's the same as a hate crime. It's not transmitting and I say I didn't do it and then I do exactly the same thing does not change the nature of the act. I'd like to reserve the balance of my time. All right. Thank you. May it please the court, I'm Todd Greenberg, an assistant U.S. attorney here in Seattle. Let me start by just addressing a couple of additional points regarding the notice, issue rule 32H. As the court has pointed out, the defendant had a full opportunity to present all mitigating factors and he had a motive to do so, and he did do so. I would point to two other things, though. First, if you look at the basis for the departure here, it was very specific. It's indicated in the statement of reasons form. It's section 5K2.0A3, and that authorizes a departure based on circumstances that are already accounted for in the guidelines but that are present in an unusual degree, either a greater or a lesser. The significance to that is the defendant anticipated that exact issue, and although he didn't cite in his sentencing memo to that provision, he almost quoted from it. He argued that, this is a quote at ER 5859, that the risk of harm to the patrons of neighbors is considered under the base offense level. And then he goes on to say, admittedly, the court may vary from the guideline range where in the court's judgment the guidelines do not adequately cover the conduct. So he went into the sentencing hearing with his eyes open as to this very issue and argued against it. And the second thing I'd point out is that this court in Cruz Perez and the Supreme Court in multiple cases has held that when an upward departure is based on garden variety factors, such as the seriousness of the offense, the nature of the conduct, the defendant's culpability, that there's no surprise there. I mean, everyone knows that that goes into the formation of a sentence, and that's exactly what Judge Martinez did here. The sentence was based on all those typical 3553A factors that the defendant knew well to address and did address. And so there simply was no surprise, there was no prejudice, and on plain error review there is no reason to reverse or to remand on that issue. Do you agree that there was some contradictory remarks by Judge Martinez in that he said, I'm not going to apply the hate enhancement under the guidelines, but then obviously he heard powerful victim impact statements about it being a gay club and how it was kind of an assault on their community. And then he made, I can't remember the specific words, but I thought he made some remarks to the effect that maybe he did it attacking the gay community. That's correct, Your Honor. I think he used the term common sense, that the common sense would indicate that that was part of the motive for the crime. And I don't think that there was anything contradictory in the court having done that. These are separate inquiries, one under the guidelines, whether a specific enhancement applied. It didn't in this case. The government took that position, although in the plea agreement we were free to argue otherwise, but we took that position at sentencing, and as the court indicated, Judge Martinez said he wasn't applying the enhancement. But that is a separate inquiry from looking at the crime, the nature and circumstances of it under 3553A. And under that provision, it's perfectly appropriate, and I think was correct for the court to consider two aspects of this issue. One, the motive, and two, the impact that this crime had on the community. I guess I would agree with you if the judge did an upward variance, but he did an upward departure. And I think the terminology is important, right? I mean, if it was a 3553 analysis, and he said based on these factors and common sense that it was targeting the community, I'm going to give an upward variance, I don't think I would have an issue or debate with you. But he did an upward departure. Well, he said I'm not going to apply the hate crime enhancement. It sounds like he did. Well, no, he didn't. He did do an upward departure, but for reasons totally unrelated to any hate crime motive. The upward departure was based on that section that I had just quoted, 5K2.0A3, which talks about circumstances of the offense that are present to a greater degree than normal. The statement of reasons does say the court notes that the club was a gathering place for Seattle's gay community. Correct. So it's mentioned. It is mentioned. It's not the basis for the upward departure, though. I mean, it's mentioned. As the court knows, the district court has to address the guidelines and the 3553A factors. Every sentencing hearing encompasses both of those things. So, yes, the court addressed the guidelines, said the hate crime doesn't apply. The court addressed the guidelines in giving the upward departure for reasons of the circumstances of the offense, essentially, that were uniquely present here to a large degree. And the court properly discussed the 3553A factors, all of which went into the formation of the sentence, as is always the case and as this court would teach the district court to do. But to the extent that he said the court notes that the club was a gathering place for Seattle's gay community in the section of this form that says explain the facts justifying the departure, don't you need to be able to tell us why it's okay to note that in justifying the departure if he's not meeting the criteria for a hate crime? I think that the court, that is one of the circumstances of this offense. It was prevalent at the sentencing hearing. As the court has noted, the victim impact statement submitted in advance of the sentencing was powerful. Mr. Nittle spoke to the court at sentencing in a very eloquent way, as the district court had noted. And one could not impose sentence in this case without taking into account the impact that this crime had on the victims who were there in the club as well as the larger community in Seattle. So it's perfectly appropriate for the district court to consider that as part of the sentence. It's a separate thing to say is there proof beyond a reasonable doubt as to the intent of the defendant. That's a much more specific inquiry. And the court answered that in the negative but then observed that common sense would say it probably was. Those two things are not inconsistent, especially given that when you evaluate the substantive reasonableness of the sentence, this inquiry of departures and variances collapses into one review. And so in a reasonableness review here, you're looking at it from under the 3553A factors, essentially the same as you would if it were a variance. So in the end, it all comes down to whether a tenure sentence for this crime against this defendant was reasonable, and we submit that it was. Thank you, counsel. Let's put a minute on the clock. Your Honors, this comes down really part on the last point on the part is whether the guidelines mean anything. Because if you're allowed to do what the government suggested, then the guidelines, specifically the hate crime enhancement, means nothing. Because under all, there is no hate crime circumstance where this would not be true. There is no one that you can come up with where it potentially could be a hate crime, where we could not say in common sense or we think or that. So the standards imposed by Congress would become meaningless. Well, that's not true, right? So when someone who's a member of a minority community is attacked, yes, it may have an impact on the community, but part of the crime here was 700 people's lives were at risk. That wouldn't be true in a hate crime targeted against one person. Certainly. But when we look to the reasons, when we look at the nature and location, which certainly could factor into this, when we look at substantially what happened here and we look at the points to it, the argument that is made, it is incumbent upon the court, and courts do this all the time, to sit there and say, well, there was evidence presented on it. It does not meet the threshold. Therefore, I will not consider it in this part. And to explain the reasons, the courts did the exact opposite here. Finally, I will leave Your Honors with this. This court was sentenced as if it was an intentional murder case. It's 120, as we set out. That wasn't what was found, but that's how it was sentenced in this particular case, and that is an abuse of discretion. Thank you, Your Honors. Thank you very much, both sides, for your arguments. Matter submitted.
judges: Carney, Nguyen, Friedland